## YUEN PAK SUNE v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.   November 1, 1911.)

### No. 19.

ALIENS (§ 32*)—PROCEEDINGS FOR DEPORTATION OF CHINESE—APPEAL.

An appeal from an order for the deportation of defendant as a Chinese person unlawfully in the United States held frivolous on the record, and the order affirmed.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*

What Chinese persons are, excluded from the United States, see note to Wong Yon v. United States, 104 C. C. A. 538.]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Proceeding by the United States against Yuen Pak Sune, alias Bak Thune, and others. From an order of deportation, Yuen Pak Sune appeals. Affirmed.

For opinion below, see 183 Fed. 260.

---

R. M. Moore, for appellant.

George B. Curtiss, U. S. Atty. (H. E. Owen, Asst. U. S. Atty., of counsel), for the United States.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. Appellant came from China to Vancouver, the nearest United States port of entry to which is Seattle. He did not present himself there, but came by rail to Montreal, and thence to Athelstan, a station near the border line between the United States and Canada. He thence proceeded by carriage to a point in Canada opposite the town of North Burke, N. Y., where he left the carriage and proceeded on foot, in company with other Chinese persons, across the border line into the United States. He was taken into custody by a Chinese inspector and taken to Boston, the nearest port of entry. There he had a hearing before the immigration commissioner, who refused him admission and ordered him to be returned to Canada. The Canadian officials, however, refused to allow him to return, unless he paid the head tax required by that country. Thereupon he was liberated, but was forthwith arrested as an alien Chinese found unlawfully in the United States, and was brought before the District Judge.

At the opening of his examination his rights were fully explained to him, and he was told that he could see or have counsel, and could send for any person he knew or desired. The testimony he gave before the commissioner was put in evidence. He admitted his signature to it. He therein stated that he came to Vancouver by steamer; that when in China he lived in Hung Mei district, and his occupation was attending school; that he did not know how long he lived in that village prior to going to Canada, did not know his father's or mother's name, nor where he was born; that no one ever told him where he was born; that he did not know what prompted him to go to Canada or to the United States, nor who arranged for his coming there, nor where he was going, nor whether he had any brothers or sisters, nor whether he had any friend or relatives or acquaintances in the United States. This negative testimony was not the result of any misunderstanding, for he said he understood the interpreter in all the questions he asked.

On examination before the court he testified that "his cousin" bought his ticket to Montreal and Boston, but he did not know the cousin's name; that in China he never worked at all, only attended school, and boarded with his mother; that he did not know what her business was, nor whether she owned a place or home or land there, nor what her name was—never knew her name; did not know his father's name, nor whether he had brothers or sisters, uncles or aunts; that he was in school in China five or six years, but cannot remember what he did before he went to school; that the first thing he can remember is that he was living all alone in a brick house; did not know who owned it, nor whether he paid any rent; that he was married, but did not know how old he was when he was married, nor what his wife's name was, nor how long she lived with him in the brick house,

nor whether he had any children, nor what became of his wife, nor how he found out in China what his name was. On this examination, also, he said he understood what the interpreter asked him. It is not surprising that the District Judge reached the conclusion that the appellant was found unlawfully in the United States. We have set forth the evidence in the case at length as a text upon which to indicate our disapproval of the prosecution of frivolous appeals in similar cases. The only assignment of error is that appellant was not given a fair and reasonable opportunity to present evidence in his behalf. The record wholly fails to support such assignment. At every stage of the case he was fully advised of his rights, and to the question whether there was any one he wanted to see or send for he replied in the negative.

The order of deportation is affirmed.